# AGREEMENT
# BETWEEN



~~JFK HARTWYCK AT EDISON ESTATES~~

JFK HARTWYCK AT CEDAR BROOK

AND



# SEIU 1199 NEW JERSEY HEALTH CARE UNION,

# APRIL 1, 2005 THROUGH MAY 31, 2008

**JFK HARTWYCK AT CEDAR BROOK** .................................................................**39**
   ARTICLE 1 – BARGAINING UNIT ...........................................................41
   ARTICLE 2 – UNION SHOP ...................................................................41
   ARTICLE 3 – UNION ACTIVITIES AND COMMUNICATIONS.....................42
   ARTICLE 4 – PROBATIONARY PERIOD....................................................43
   ARTICLE 5 - SENIORITY .......................................................................43
   ARTICLE 6 – LAYOFF AND RECALL.......................................................44
   ARTICLE 7 – TRANSFER AND PROMOTION ...........................................45
   ARTICLE 8 – NO DISCRIMINATION.........................................................46
   ARTICLE 9 – DISCIPLINE AND DISCHARGE ...........................................47
   ARTICLE 10 – NO STRIKE-NO LOCKOUT .................................................47
   ARTICLE 11 – GRIEVANCE AND ARBITRATION PROCEDURE.....................48
   ARTICLE 12 – WORK WEEK ..................................................................50
   ARTICLE 13 – WAGES .........................................................................53
   ARTICLE 14 – MEALS ..........................................................................55
   ARTICLE 15 – HOLIDAYS .....................................................................55
   ARTICLE 16 – VACATIONS ...................................................................56
   ARTICLE 17 – SICK LEAVE ...................................................................57
   ARTICLE 18 – LEAVE OF ABSENCE .......................................................58
   ARTICLE 19 – BEREAVEMENT LEAVE ....................................................59
   ARTICLE 20 – LEAVE FOR JURY DUTY ...................................................60
   ARTICLE 21 – MISCELLANEOUS PROVISIONS .........................................60
   ARTICLE 22 – UNIFORMS ....................................................................61
   ARTICLE 23 – MAINTENANCE OF STANDARDS.........................................61
   ARTICLE 24 – CHECK OFF AUTHORIZATION.............................................61
   ARTICLE 25 – SAVINGS CLAUSE ...........................................................62
   ARTICLE 26 – CONTRACTING OUT ........................................................62
   ARTICLE 27 – 1199 BENEFIT FUND........................................................63
   ARTICLE 28 – CEDARBROOK RETIREMENT ACCOUNT ..............................65
   ARTICLE 29 – NATIONAL INDUSTRY PENSION FUND ................................65
   ARTICLE 30 – TRAINING AND EDUCATION FUND .....................................67
   ARTICLE 31 – PAYMENTS ....................................................................67
   ARTICLE 32 – MANAGEMENT RIGHTS ....................................................68
   ARTICLE 33 – LABOR MANAGEMENT COMMITTEE ...................................68
   ARTICLE 34 – HEALTH AND SAFETY.......................................................69
   ARTICLE 35 - STAFFING AND PATIENT CARE ..........................................69
   ARTICLE 36 – 1199 CREDIT UNION ........................................................69
   ARTICLE 37 – PARTIES ........................................................................70
   ARTICLE 38 – CONTINUATION OF OTHER TERMS OF EMPLOYMENT .........70
   ARTICLE 39 – DURATION .....................................................................70
   SCHEDULE A – CEDAR BROOK ............................................................73
   SCHEDULE B: CERTIFICATION OF DOMESTIC PARTNERSHIP ....................75

# AGREEMENT

AGREEMENT, made this day of April 1, 2005 by and between SEIU 1199 New Jersey, SERVICE EMPLOYEES INTERNATIONAL UNION, hereinafter referred to as the "UNION" having its principal offices at 555 Route One South, Iselin, New Jersey 08830, and JFK HARTWYCK AT CEDAR BROOK, hereinafter referred to as the "EMPLOYER," located at 1340 Park Avenue, Plainfield, in the State of New Jersey 07060.

# WITNESSETH

WHEREAS, the Union has been designated by a majority of the employees the bargaining unit as their sole collective bargaining agent with respect to wages, hours and other conditions of employment; and

WHEREAS, it is recognized that the efficient and orderly method of establishing and maintaining peaceful and harmonious labor relations and dealing with problems and controversies arising out of employment is through negotiations and agreement, rather than through strikes and lockouts.

NOW, THEREFORE, in consideration of the mutual promises herein contained, the parties agree as follows:

## ARTICLE 1 – BARGAINING UNIT

1.1   The Employer recognizes the Union as the sole and exclusive bargaining agent for all employees, excluding registered nurses, maintenance employees, confidential office and clerical employees, supervisors, ~~recreation~~ watchmen and guards. In the event any dispute arises as to whether or not an employee does, in fact, come within one of the excluded categories above mentioned, such dispute shall be submitted to arbitration for settlement and determination in the manner hereinafter provided. No supervisor shall perform bargaining unit work except for purpose of instruction or in any emergency.

## ARTICLE 2 – UNION SHOP

2.1   It shall be a condition of employment that all employees covered by this agreement who are members of the Union in good standing on the execution or effective date of this Agreement whichever is later, shall remain members in good standing and those who are not members on the execution or effective dares of this agreement, whichever is later, shall on the thirtieth (30th) day following the execution or effective date of this agreement, whichever is late, become and remain members in good standing in the Union. It shall also be condition of employment that all employees covered by this agreement hired on or after its execution or effective date, whichever is later, shall on the thirtieth (30th) day following the beginning of such employment become and remains members in good standing in the Union.

2.2   Upon written notice by the Union to the Employer that an employee has not complied with the union shop requirements, the Employer shall forthwith discharge said employee and advise the Union thereof in writing of its actions taken. The Employer shall promptly upon hiring new employees notify them of the existence of the Union agreement and the Union shop provision thereof

2.3   The Employer shall forthwith give the Union a list containing the names, social security numbers, and the home addresses of employees covered by this agreement, their categories, wages and dates of hire, and shall thereafter promptly furnish from time to time the names, homes address, dates of hire, categories, social security numbers and wages, of all new employees in the bargaining unit.

## ARTICLE 3 – UNION ACTIVITIES AND COMMUNICATIONS

3.1    The Union shall be permitted to conduct Union meetings on the Employer's premises.

3.2    Staff representatives shall have access to the Employer's premises to discharge her duties as representative of the Union. Upon entering the facility, the Union representative shall inform the receptionist upon her/his arrival.

3.3    Union Delegates and Committees elected or selected by the Union shall take up with the Employer during working hours at reasonable times problems that might arise at the place of employment.

3.4    Grievances shall normally be processed during the working hours of the affected employee(s). Employees shall suffer no loss of pay on account of participating in grievance meetings.

3.5    The Employer shall provide to the Union a sufficient number of locked, glass enclosed bulletin boards at each work site for the posting of notices pertaining to Union activities.

3.6    Designated Union Delegates shall have up to thirty (30) minutes to orient new bargaining unit employees to the Union. This will be part of the employee's normal orientation and shall cover topics related to this Agreement and SEIU 1199NJ. Union Delegates shall not disparage the Employer in orientation.

3.7    In the interest of maintaining stability of labor relations and realizing that the handling of grievances by Delegates is an important step in the initial processing of grievances so as to encourage stability of labor relations, the parties agree that it is advisable from time-to-time, during each contract year, that a cumulative total of seven (7) days per year shall be paid to Union Delegates for lost time, at straight time rates, for the purpose of working on election day, attending conferences or Delegate training programs. The Union shall provide two (2) weeks advance notice to the Employer and shall not request that more than one (1) Delegate from each unit on each shift shall attend such conferences and training programs at the same time.

3.8    The Employer shall grant Union leave up to one (1) year or the individual's length of service at the facility, whichever is less, shall be granted to employees in order to accept a position with the Union.  Time spent on Union leave shall count as time worked for seniority and all other purposes.  Upon returning to work at the facility, the employee shall return to substantially the same position (i.e., status, shift, job classification) as the employee held prior to the Union leave.

3.9    The Employer shall release members of the Union's Executive Board in its employ so that they may attend six (6) Board meetings per year with pay.

3.10   Negotiations.  The Union negotiating committee, not to exceed a cumulative total of twenty (20) negotiation sessions by the Employer at straight time rates.

## ARTICLE 4 – PROBATIONARY PERIOD

4.1    New employees shall be deemed probationary during the first ninety (90) days of their employment during which time they may be discharged for any reason which need not be stated by the Employer.

## ARTICLE 5 - SENIORITY

5.1    Seniority" shall be the length of an employee's continuous service from the employee's most recent date of hire by the Employer.

5.2    Seniority shall also accrue during paid leaves, military leaves, leaves of absence, or during the period which the employee receives disability benefits or workmen's compensation.

5.3    Seniority shall be terminated by:

    (a)    Discharge without being reinstated;
    (b)    Voluntary quit or resignation;
    (c)    Overstaying an authorized leave of absence, unless extended, or giving a false reason for such leave or acceptance of employment with any other Employer during such leave of absence;

(d)    Layoff for a period of one (1) year or more, or if for any reason more than one (1) year has elapsed since the employee last worked for the Employer.

5.4    On March 30, June 30, September 30 and December 30 of each year, the Employer shall provide to the Union a list of bargaining unit employees with their bargaining unit seniority, rate of pay, status (part-time/full-time) and job classification. The Employer shall provide the seniority lists to the Union no later than fifteen (15) calendar days after the dates indicated above.

5.5    Delegates shall have top seniority for the purposes of layoffs in connection with Article 6 of this Agreement.

## ARTICLE 6 – LAYOFF AND RECALL

6.1    The Employer has the right to lay-off only for bona fide reasons, provided it shall not result in or require the remaining employees to assume substantially more work or duties or responsibilities in excess of what they were doing prior to layoff. Prior to finalizing any decision to reduce the work force, the Employer will notify the Union that such action is under consideration and the parties will meet to discuss the reasons and impact of such action and consider possible alternatives. If a layoff or reduction of hours then becomes necessary, the Employer will notify the Union of its intention to proceed as soon thereafter as reasonably possible but no less than fourteen (14) days in advance.

6.2    In the event of a layoff or reduction of hours, the Employer shall determine the positions (job classification, status, and shift) affected.

6.3    Temporary and probationary employees shall be laid off first. Then the employee with the least seniority in the affected position shall be laid off or reduced first. Affected employees shall be given at least twenty-four (24) hours to make their displacement or layoff choice. The displaced employee will have the options outlined below:

Displace the least senior employee with the same status and classification on another shift, provided he/she has more seniority than that employee; or

Displace the least senior employee with the same status and shift in a classification he/she has previously held, provided he/she has more seniority than that employee;
or
Choose an unfilled position, provided he/she is qualified, without additional training.
or
Displace the least senior employee in any position for which he/she is qualified, provided he/she has more seniority than that employee;
or
Choose to take a layoff.

If more than one (1) employee is being laid off at one time, they shall exercise their various options according to seniority with the most senior employees going first.

6.4    When recall occurs, the employee laid off last shall be rehired first according to seniority. Recalled employees will be notified by registered mail and they must respond within three (3) days. If there is no response after three (3) days, the next most senior employee for that recalled position shall be notified.

## ARTICLE 7 – TRANSFER AND PROMOTION

7.1    When a permanent job vacancy occurs in the bargaining unit, and the Employer intends to fill the vacancy, or in the event of the creation of a new job within the bargaining unit, the Employer will post a notice of such vacancy for a period of seven (7) calendar days. The posting shall include the job classification, pay grade, shift, weekend schedule, if any, floor/unit and status. Bargaining Unit employees shall be eligible to bid on open positions occurring within the same shift and classification.

7.2    Each employee who has passed the probationary period may submit an application on the job bid form for the posted position prior to the end of the posting period.

7.3    During the posting period, the Employer will not make an offer to a non-employee, but may engage in screening or interviewing of non-employees.

7.4    (a)    The job shall be awarded to the qualified bidder with the most seniority who is employed in the same classification as the posted position. If there are no bidders from the classification where the vacancy exists, then the job shall be awarded to the qualified bidder with the most seniority from another job classification. Successful applicants will be placed in the new job no later than thirty (30) calendar days after the posting of the vacancy. If there are no qualified bidders from the bargaining unit, the Employer may hire from outside the bargaining unit.

(b)    A qualified bidder is one with the required licensure or certification, and whose performance evaluations and work record (attendance, discipline) demonstrate that the employee can perform the duties of the posted job in a manner which provides quality care and service to the residents.

7.5    An employee who successfully bids on a new position shall serve a trial period equal to the probationary period set forth in Article 4 - Probationary Period. If the employee does not pass the trial period, the employee may return to his/her former job level without loss of seniority. An employee may, during the first thirty (30) calendar days, elect to return to the former job without loss of seniority, if the job has not been filled or, if filled, may return to the former job level without loss of seniority. Employees who are awarded a new job after a bid, and who successfully complete the trial period, shall be precluded from bidding on another job for a period of six (6) months after the award.

## ARTICLE 8 – NO DISCRIMINATION

8.1    The opportunity to give and obtain employment without discrimination because of race, creed, color, age, sex, sexual orientation, disability, marital status, or national origin hereby recognized by the parties to this agreement. The Employer shall not discriminate against any employee because of Union activities. "F.M.L.A." shall be recognized and employees shall have the option of utilizing paid benefit time.

## ARTICLE 9 – DISCIPLINE AND DISCHARGE

9.1    The Employer may not discharge or otherwise discipline a non-probationary employee without just cause.

9.2    If an employee receives a written reprimand, suspension or discharge, the Employer will state in writing the reason(s) for the discipline.  The Employer agrees to provide a copy of written disciplinary notices to the employee, Delegate, and to the Union office within five (5) working days following the disciplinary action unless the employee specifically advises the Employer that he or she does not wish the Delegate to have a copy.

9.3    An employee will not be disciplined for an act(s) which occurred more than thirty (30) days prior to the issuance of discipline, unless the Employer was without knowledge of the act, in which case the thirty (30) days will be measured from the date the Employer should reasonably have known of the act, or unless the discipline shall be for acts which constitute a criminal felony or misdemeanor, in which case the thirty (30) days will be measured from the date of conviction or plea.  This provision shall not apply to attendance issues which the Employer shall review on a quarterly basis.

9.4    An employee called to a disciplinary meeting shall be informed of the right to representation by a Union Delegate and The Employer shall comply with the employee's request.

## ARTICLE 10 – NO STRIKE-NO LOCKOUT

10.1    During the term of this agreement, the Union shall not call or authorize any strike against the Employer at the establishment covered by this agreement and the Employer shall not affect any lockouts.  Should any employee or employees engage in any strike and should the Employer notify the Union of such action, a Representative of the Union shall, as promptly as possible, instruct such employees to forthwith cease such action and promptly return to their respective jobs and comply with the applicable provisions of this agreement.

10.2    The Employer agrees that in consideration of the performance by the Union as set forth above, with respect to any strike which is contrary to the

provisions of this section, there shall be no liability for damages on the part of the Union, its officers, agents, or members for breach of contract, by suit or otherwise.

## ARTICLE 11 – GRIEVANCE AND ARBITRATION PROCEDURE

11.1  All complaints, disputes or grievances whatsoever or whatever kind or nature arising between the Union and the Employer concerning any provisions of the contract, or with respect to any other acts, conduct or relations or terms or conditions of employment of whatsoever, nature or otherwise between parties, directly or indirectly, shall constitute a grievance.

11.2  All grievances shall be taken up with the Administrator within (30) days after the occurrence which gave rise to the matter, except for a continuing grievance which must be taken up within thirty (30) days from the date it was first discovered.

11.3  Any grievance not amicably resolved between the parties may be submitted to an impartial arbitrator who shall be selected in accordance with the rules and regulations of the New Jersey State Board of Mediation. The decision of the arbitrator shall be final and binding on the parties and the grievant(s).

Either party shall bring on an arbitration by a written notice sent by the party requesting the same, addressed to the other party at the address set forth in this agreement within thirty (30) days from the date the parties met to discuss the grievance. Said notice shall be required to set forth the issue and it shall be sufficient that a grievance or dispute exists between the parties. No more than one (1) grievance shall be submitted in any one (1) arbitration.

11.4  The arbitrator who is selected shall, upon such notice as he shall give the parties, proceed to a hearing at a time and place fixed by him. All the aforesaid notices shall be deemed good and sufficient notice and the parties waive the application of any laws to the contrary. If either party fails or refuses or neglects to appear, then the arbitrator shall hear the evidence of the party appearing and render his decision as if both parties appeared. As many as five (5) employees called as witness in any arbitration proceeding shall not suffer any loss of pay and shall be made whole for all time lost from work as a result of appearing at such arbitration proceeding. Judgment shall be entered upon the award in a court of competent of jurisdiction. The oath of the arbitrator is expressly waived. The cost of the arbitration shall be borne equally by both parties. The parties consent that any and

all papers, notices, petitions, subpoenas, or legal documents required to institute or continue an arbitration, to enforce or confirm an award, or to enter judgment thereon shall be deemed duly and sufficiently served if served by ordinary mail directed to the party's address as set forth herein or to the party's attorney. Service in the manner herein provided shall be sufficient to confer jurisdiction upon the arbitrator to render his award and sufficient for a court of competent jurisdiction to confirm the award and enter judgment thereon. It is expressly agreed that neither the Employer nor the Union or any employee will seek removal from the Courts of the State of New Jersey to the Federal Courts of any proceedings to enforce an award and/or to compel submission to arbitration and they expressly waive the right to seek such removal. The arbitrator is empowered to determine his jurisdiction, all questions of arbitrability and to grant all appropriate remedies and to include in his award mandatory and injunctive relief and to determine the appropriate measure of damages.

11.5    The procedure for arbitration is the sole and exclusive remedy of the parties, and such procedure shall be, in lieu of any and all other remedies, forums at law, in equity or otherwise. It is understood that the adjustment of dispute as set forth herein is the sole and exclusive remedy of the Union, the Employer and the employees covered by this agreement, and such procedure shall be (except to enforce, vacate or modify awards) in lieu of any and all remedies, forums at law, in equity or otherwise, which will or may be available to the Union, the Employer and employees covered by this agreement. No individual employee may initiate any arbitration proceeding.

11.6    It is agreed that the maintenance of a peaceful and constructive relationship between the Union, the Employer and their employees requires the establishment of cooperative use of the grievance and arbitration machinery for the settlement of all grievances and disputes, and that it would detract from this relationship if the Employer and the individual employees or groups of employees would either as such individuals or groups seek to interpret or enforce this agreement on their own initiative or responsibility. It is therefore, agreed that this agreement shall not vest or create in any employee or group of employees covered thereby any rights or remedies which they or any of them may enforce either at law or in equity or otherwise. It is understood and agreed that all of the rights and privileges created by or implied from this agreement shall be enforceable only by the Union, the Employer and only in the manner established by this Agreement.

11.7   The maintenance of industrial stability requires the establishment and cooperative use of the grievance and arbitration machinery for the settlement of all grievances and disputes.

## ARTICLE 12 – WORK WEEK

12.1   The regular work shall be thirty-seven and one half (37 ½) hours consisting of five (5) consecutive days in any week (consecutive days may be waived at the option of the employee); the work day shall consist of seven and one-half (7 ½) consecutive hours in any one day. All hours worked in excess of seven and one-half (7 ½) hours in any one day or thirty-seven and one-half (37 ½) hours in any week shall be paid for at the rate of time and one half the regular hourly rate of pay. Overtime shall be offered on the basis of seniority.

12.2   All time worked on the sixth (6th) work day shall be paid at the rate of time and one-half (1 ½) the regular hourly rate of pay; all time worked by employees on the seventh (7th) work day shall be paid for at the rate of time and one-half (1 ½) the regular hourly rate of pay.

12.3   Part-time employees (defined as employees who work on a regular schedule of less than twenty (20) hours per week) shall receive all fringe benefits except as otherwise provided, pro-rated according to the hours they actually are paid for. The working time of part-time employees and all other employees working less than the regular work week shall be averaged over a period of three (3) months to determine the benefits to which he is entitled. Hours actually paid for as stated above, do not include sick time buy out.

12.4   No overtime shall be worked except with the prior written consent of the Union, except where there is sufficient time to obtain same or the Home is unable to do so.

12.5   No employee will be transferred to a shift other than that for which said employee was hired, except by mutual consent. There shall be no change in the schedules except on at least one (1) week's written notice to the Union.

12.6   Employees shall receive every other weekend off where possible. Employees presently receiving every other weekend off or more than every other weekend off shall continue the same.

12.7   Each employee shall receive one fifteen (15) minute coffee break in the first half of his shift and one fifteen (15) minute coffee break in the second half of the his shift to be scheduled properly by the Employer.

12.8   On-Call Pool of Employees

1.     The Employer may create an On-call Pool of Employee numbering no more than (10) such employees    at any given time. On-call employees will join the Union as required , but will pay only part-time dues. Their initiation fee may be paid over three (3) months. Such employees shall each work no more than two (2) shifts during payroll week.

2.     The provisions of the agreement not withstanding these on- Call employees will not receive any of the benefits    provided for under the agreement, but shall instead be paid $10.00 extra for each day they work in lieu of such benefits.

3.     If such an employee works a third (3) shift in a payroll week (except in any emergency as defined below), he/she shall automatically be removed from the pool and henceforward be considered a regular part-time employee and will prospectively be treated as such in accordance with the terms of the Collective Bargaining Agreement.

4.     For the purpose of this Article only, emergency shall be defined as follows: On any occasion where the home i  s left short staffed and other regular employees are asked to stay over  and work  another shift, if they refuse to do so cooperate, than on-call pool employee may then be asked to stay and work. If the on-call employee works as requested and that causes him/her to end up the payroll week having worked three shifts, than under those circumstances he/she would not be deemed to have converted his/her status to a regular part-time employee as stated above and under these circumstances would retain his/her status as an On-Call Pool Employees.

12.9   Employees shall receive every other weekend    off where possible. Employees presently receiving every other weekend off shall continue to receive the same.

a. For purposes of weekend absences, up to 5 shop stewards shall have top seniority and not be required to make up absences.

b. Employees who do not report to work on one or both shifts of a weekend as scheduled shall be required to make up their weekend shift. Effective July 1, 2001, weekend absences will be monitored on a 6 month basis (Jan-Jul) and (Jul-Dec):

c. Makeup weekends will be done as follows:

d. Any employee who is required to makeup weekends must do so on their own shift unless otherwise mutually agreed.

e. The term weekend shall mean Saturday and Sunday for the purpose of this article unless otherwise specified in this agreement.

f. Employees hired for 1 year or less shall be required to make up weekends if they call out on the weekend.

g. Employees hired prior to 7/1/91 shall not be required to make up weekend callouts.

h. Other employees employed for more than 1 year who call out more than 1 time in the 6 month period shall be required to make up weekends.

i. Making up weekends shall not be required for employees who are absent for (6) or more consecutive days.

j. Makeup weekends will be scheduled at a time mutually agreeable to employee and management but such time shall mot extend beyond (2) months of the callout.

k. In scheduling makeup weekends, preference of schedule will be given to the most senior employees. Mandate of schedule may be given to the least senior employee.

l. Employees working more than their regular work day or work week shall receive overtime pay for the purpose of this article.

12.10  Each employee shall receive one fifteen (15) minute coffee break in the first half of his shift and one fifteen (15) minute coffee break in the second half of his shift to be scheduled properly by the Employer.

12.11  Shift Differential. Employees who work the 3:00 P.M to 11:00 P.M. and 11:00 P.M. to 7:00 A.M shift will be eligible to receive a shift differential of fifteen cents ($.15) per hour for each hour actually worked on one of those shifts. If any employee works both 3:00 P.M. to 11:00 P.M and 11:00 P.M. TO 7:00 A.M. shifts consecutively {"a double shift"), they will be eligible for the differential payment only on the first of the shifts and not the second.

12.12 If two LPN's worked on the 7:00 a.m. to 3:00 p.m. shift on one unit, the one LPN who is assigned charge responsibility shall receive an additional stipend of two dollars ($2.00) per day while working as the charge LPN.

12.13 Where there is only one LPN on a unit which normally has two (2) nurses assigned on either the 7:00 a.m. to 3:00 p.m. to 11:00 p.m. shift, time and one half (1 ½) the hourly rate of pay will be paid to the one (1) LPN working on the unit plus five ($5.00) per day for taking charge.

12.14 On the 3:00 p.m. to 11:00 p.m. and 11:00 p.m. to 7:00 a.m. shift where there is no RN available in the building, but where there are two or more LPN's available in the building, and one (1) LPN is assigned to take charge of the house as a supervisor, that LPN will receive an additional ten dollars ($10.00) per day for performing said assignment.

12.15 On the 11:00 p.m. to 7:00 a.m. shift, if there is only one LPN in the entire building and no RN available in the building, that LPN will receive time and one half (1 ½) plus four dollars ($4.00) per day.

12.16 LPNS who work the 3:00 p.m. and to 11:00 p.m. and 11:00p.m. to 7:00a.m. shift will be eligible to receive a shift differential of fifteen cents ($.15) per hour for each hour actually worked on one of those shifts. If any employee works both the 3:00 p.m. to 11:00 p.m. and 11:00 p.m. to 7:00 a.m. shifts consecutively ("a double shift") they will be eligible for the differential payment only on the first of the shifts and not the second.

## ARTICLE 13 – WAGES

13.1  Effective May 1, 2005, post-probation rates contained in Appendix A shall be implemented and all current employees shall receive a three and one-half percent (3 ½) increase.

13.2  Effective May 1, 2006, the post-probation rates shall be increased by two and one-quarter percent (2 1/4%) and all employees earning below the 3-Year Step in the wage scale shall receive a two percent (2%) increase. All other employee shall receive a four and one-quarter percent (4 ¼%) increase.

Effective November 1, 2006, the wage scales contained in Appendix A shall be in effect and employees with a wage rate less than the highest rate on the scale

shall be placed on the appropriate step which corresponds with the employee's years of service as of her/his most recent anniversary date provided it is an increase of two percent (2%) or less. The employee shall proceed to the next step on the scale on her/his next anniversary date. Thereafter, each employee who is not above the wage scale shall be paid pursuant to Appendix A and proceed to the next step on the scale on her/his next anniversary date until the employee is at the top of the wage scale for her/his job title.

13.3    During the life of this Agreement, red circled employees shall receive the following additional wage increases during the term of this Agreement:

5/1/2007            4.25%

13.4    If an employee transfers to a higher paid labor grade, the employee shall be placed at the starting rate or at the step that provides a minimum of three percent (3%) increase, whichever is greater.

13.5    Employees performing work of a higher classification shall receive the rate for the higher classification.

13.6    The Employer in its sole discretion may pay new employees up to one dollar ($1.00) per hour less than the post probation rate while the employee is on probation.

13.7    Wages are to be paid by check every two (2) weeks and accompanying all pay shall be itemized list of deductions.

13.8    If the Employer institutes a weekly payroll at all other Nursing Home facilities, owned in New Jersey by the owners at JFK Hartwyck at Cedar Brook, the Employer shall likewise provide a weekly payroll for the employees at JFK Hartwyck at Cedar Brook.

13.9    In the event the check distribution date needs to be changed by one (1) day in either direction to expedite payroll, employees shall be notified thirty (30) calendar days in advance.

## ARTICLE 14 – MEALS

14.1   Full, good and wholesome meals shall be furnished to each employee without the cost to the employee.  The failure, refusal or omission of the Employer to provide the required meals, shall constitute sufficient grounds to support the claim of affected employees for payment in lieu thereof at the rate of one dollar and seventy-five cents ($1.75) per meal.  The Employer shall have the option of paying full time employees a one dollar and seventy five cents ($1.75) per meal allowance in lieu of meals and coffee as well as any miscellaneous items such as cups, utensils, etc.  The Employer will however provide coffee on the two coffee breaks.  An alternate meal will be provided to a staff member who requires one for medical and/or religious reasons, provided one month's notice and documentation of physician and/or clergy is provided to the Department Head.

## ARTICLE 15 – HOLIDAYS

15.1   All employees shall receive the following holidays with pay:

| | |
|---|---|
| *New Year's Day | Decoration  Day |
| Independence Day | Labor Day |
| *Thanksgiving Day | *Christmas Day |
| Employee's Birthday | Floater Holiday ** |
| President's Day | Licensed Practical Nurse Day |
| 2 Personal Days | |

*Denotes Premium Holiday – Paid at the rate of time and one half (1 ½).
**Floater Holiday: must be hired before 3/1 of the year to be eligible for the Floater Holiday.

(a)    Employees hired between 3/1 and 4/30 of a calendar year get two (2) personal days that calendar year. After completing the first calendar year, each employee gets three (3) personal days.

15.2   All leap-year birthday employees shall have an equivalent day off each year.  The date of an employee's birthday as set forth on his application for employment shall be conclusive upon the Employer.  If a holiday or the employee's birthday falls on one of his days off, he shall still be entitled to the

holiday or birthday pay. New employees must work three (3) months in each calendar year before becoming eligible for personal days.

15.3    Should it be necessary for an employee to work on any of the holidays to which he is entitled, he shall receive his regular straight time pay in addition to the holiday pay or day off by mutual agreement. If an employee works Thanksgiving Day, Christmas Day or New Year's Day, the employee will be paid at the rate of time and one half the employees straight time rate of pay in addition to the holiday pay or receive another day off, by mutual agreement.

15.4    Employees shall be notified by their Employer five (5) days in advance in the event the said Employer requires such employee or employees to work on the holiday.

15.5    If any one of the holidays or the employee's birthday occurs during his vacation period, such employee shall be entitled to receive an additional day's pay in lieu thereof.

15.6    To be paid for a named holiday, the employee must have worked their own scheduled workday before and after the holiday.

15.7    Employees may take a personal day at any time they wish, provided they request to take it prior to the posting of the schedule which would cover the day they are requesting. This privilege is not to be abused and if the Employer believes that it is, or too many employees are requesting the same day, so as to interfere with coverage, then the Employer may deny it.

## **ARTICLE 16 – VACATIONS**

16.1    Vacations with full pay shall be granted for full length of service in the establishment, and not merely based on length of ownership of the establishment by the employee as follows: employees must give 2 weeks working notice in order to be paid out vacation balance when they resign.

## Licensed Practical Nurses

| PERIOD OF SUBSTANTIAL EMPLOYMENT | AMOUNT |
|---|---|
| 6 months but less than one year | 1 week |
| 1 year, but less than 2 years | 2 weeks |
| 2 years, but less than 4 years | 3 weeks |
| 4 years but less than 10 years | 4 weeks |
| 10 years or more | *5 weeks |

* LPN's hired prior to 11/13/00 will receive 5 weeks vacation after 1 0 years. LPN's hired after 11/13/00 will be capped at 4 weeks vacation.

## All Other Employees

| PERIOD OF SUBSTANTIAL EMPLOYMENT | AMOUNT |
|---|---|
| 6 months, but less than one (1) year | 5 DAYS |
| 1 year, but less than 5 years | 10 DAYS |
| 5 years, but less than 10 years | 15 DAYS |
| 10 years or more | 20 DAYS |

16.2   Vacation assignments shall be made by the Employer and the Union to insure the orderly and efficient continuation if operations, but Employer agrees to give, wherever possible, the desired vacation time on a consecutive basis indicated by the employee in order of seniority. Vacation pay shall be paid by check on the last regularly scheduled working day prior to such vacation. Breaks in service not exceeding three (3) consecutive months shall not affect an employee's eligibility for vacation benefits. Vacation replacements need not be in the Union. When resigning, an employee must be employed one (1) year and shall give at least two (2) weeks advance notice of her/his resignation, unless reasonably unable to do so, in order to receive accrued time.

## ARTICLE 17 – SICK LEAVE

17.1   Each employee shall receive a maximum of twelve (12) days of paid sick leave, accruing at the rate of one (1) day each month of substantial continuous employment. Leaves of absence for illness not exceeding  three (3) months shall not be counted in determining "substantial employment".  Accrual of sick leave

will begin on date of hire. Sick days may not be used until employee completes probationary period.

17.2   Unused sick leaves shall be paid to employee s at least one (1) week prior to Christmas time in each year or more often as deemed proper by the Employer except that in the year this agreement terminates, or upon termination of employment for any reason, whatsoever, it shall be on such termination date.

17.3   Sick leaves shall be paid for at the rate prevailing at the time of accruals and when used. Sick leave will be paid for as and when used.

17.4   When resigning, an employee must be employed one (1) year and shall give at least two (2) weeks advance notice of her/his resignation, unless reasonably unable to do so, in order to receive accrued time.

## ARTICLE 18 – LEAVE OF ABSENCE

18.1   Any employee becoming ill shall be entitled to a leave of absence for an illness lasting up to six (6) months during any twelve (12) month period, and said employee shall be entitled to reinstatement upon recovery without loss of seniority. Any employee injured upon the job shall be reinstated upon recovery without loss of seniority or any other benefit provided herein. Certification may be requested.

18.2   Any employee who has been employed for at least one year shall be entitled to a leave of absence for personal reasons not to exceed one (1) month which privilege shall not be abused. The employee shall give reasonable written notice to the Employer that he is taking the leave of absence. Any longer period of time shall be granted by mutual consent between management and Union. Such consent shall not be unreasonably withheld.

18.3   In the event an employee is drafted or enlists in the armed services, said employee, upon honorable discharge, shall be entitled to reinstatement to the position held at the time of joining the armed service and shall receive such rate of pay as shall at the time of reinstatement represent the current rate of pay, for that position, in the Employer's establishment.

18.4   **Maternity Leave.** Leaves of absence shall be granted for pregnancy for a period of up to twelve (12) months commencing as o f the time the pregnant

employee leaves her employment, and the said employee shall be entitled to reinstatement at the conclusion of such leave without loss of seniority. An employee must inform the Employer as soon as she learns of her pregnancy.

**18.5  Paternity Leave.**  In the event an employee's spouse gives birth to a child, then the employee shall be entitled to one (1) day of paid leave.

**18.6  Leave for Marriage.**  In the event an employee marries, the employee shall be entitled to two (2) days of paid leave.

**18.7  Leave For Study.**  An employee who wishes to undertake the schooling to qualify for a higher classification of work will be granted a leave of absence for not more than twenty four months (24) months to complete such schooling, and upon proof of satisfactory completion thereof, the Employer shall grant such employee preferential hiring rights in the classification in which such employee is then qualified. In the event an employee takes a leave of absence for study, and such leave extends beyond one (1) year in duration, the Employer has the right to hire a temporary employee to fill the absence. Temporary employee will not be a member of the bargaining unit and will be employed for a period not to exceed one (1) year. Temporary employees shall be paid the starting rate defined in the bargaining agreement for the job for which they are hired. Employer agrees that no more than two (2) such temporary employees shall be employed concurrently.

## ARTICLE 19 – BEREAVEMENT LEAVE

**19.1**  In the event of a death of the immediate family of any employee the employee shall be entitled three (3) days of paid leave. Immediate family is parents, domestic partner (as outlined in Schedule C), brother, sister, spouse, child, mother-in-law, father-in-law and grandparents. In the even of a death of a family member of the immediate family who lives out of town and additional time off is necessary, the Employer will grant reasonable additional time off without pay for the purpose of attending a funeral. Verification of death, if requested by the Employer, shall be furnished by the Employee. Bereavement time must be taken within seven (7) days of the death.

## ARTICLE 20 – LEAVE FOR JURY DUTY

20.1   Employees called for Jury Duty shall be paid the difference between their regular pay and the amount they received as jury pay for a maximum period of two (2) weeks in any one (1) year. The Employer reserves the right to attempt to have an employee relieved of jury duty.

## ARTICLE 21 – MISCELLANEOUS PROVISIONS

21.1   **Government Controls.** If the Federal Government institutes wage controls in any form and any portion of this collective bargaining agreement is deferred or cutback, the parties shall meet promptly to attempt to allocate the monetary equivalent of the disapproved wages or benefits in a manner that would result in government approval.

If the monetary equivalent of the deferred or cutback portion cannot be reallocated, the Employer will periodically, as the prescribed payments required by the collective bargaining agreement become due, place in escrow an amount of money equal to that necessary to provide the wages and benefits deferred or cutback, only if the funds so escrowed are reimbursed to the Employer and if funding such escrow is approved in writing by Government Agencies having jurisdiction. The Employer will pay the amount directly attributable to the deferment or cutback to affected employees when legally permissible, subject to the Employer being reimbursed by the applicable government Agency.

21.2   **Polygraph Test.** The Employer shall not require, request or suggest that an employee or applicant for employment take a polygraph or any other form of lie detector test. Any polygraph statement obtained on behalf of the Employer may not be used in any proceeding involving any employee within the bargaining unit, except in proceedings where the health and safety of the patients are or may be concerned.

21.3   **Medical Examinations.** Employees may be required to take medical examinations y the Employer's designated physician at times and dates specified by the Employer. The Employer shall give reasonable advance notice to the employees of such examinations. All medical examinations required by the Employer, except pre-employment medical examination, shall be paid by the Employer except if an employee fails or refuses to take a medical examination at

the time and date specified by the Employer, after receiving reasonable advance notice of such examination, the Employer shall be relieved of his obligation to pay for such examination and the payment therefore shall be payable by the employee.

## ARTICLE 22 – UNIFORMS

22.1  **Licensed Practical Nurses.** The Employer agrees to furnish and maintain all uniforms of employees except that where an employee furnishes and maintains his own uniform, such employee shall receive an allowance of one dollar and fifty cent ($1.50) per week. Where the Employer has been furnishing and maintaining uniforms, he shall continue to do so unless the practice is changed by mutual consent. No deduction shall be made from the uniform allowance on account of illness, unless the employee is absent for an entire week.

22.2  **All Other Employees.** Employees employed at least six (6) months shall receive one (1) uniform top in June, and one (1) uniform top in December each year. Employees will also receive one (1) pair of pants per year;

## ARTICLE 23 – MAINTENANCE OF STANDARDS

23.1  The Employer shall not lower any wages, hours or working conditions. Any benefits, or whatever kind or nature enjoyed by or hereafter given to an employee, shall be continued during this agreement.  No private deals shall be made with any employee.

23.2  The Employer shall not deduct any monies from any employee for breakage or any other purpose except if malicious, intentional or required by law and except as herein expressly provided for. No bargaining unit employee's work shall be done by a non-bargaining unit employee except as otherwise provided. for under the terms of this Agreement.

## ARTICLE 24 – CHECK OFF AUTHORIZATION

24.1  The Employer agrees to deduct no later than the first payroll day of each month from the wages of employees their membership dues and  initiation fees and shall at the same time remit immediately said monies to the Union together with a list of employees names for whom such de ductions have been made

and the amounts thereof, which shall be transmitted electronically; provided that the Employer has received from each employee on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one (1) year , or beyond the termination date of this Agreement, whichever occurs sooner. All funds deducted by the Employer shall be held as trust funds and shall not be commingled with other funds of the Employer. In the event the Employer fails to promptly remit such monies, the arbitrator must, upon application, assess interest at the legal rate and reasonable attorney's fees against the Employer.

24.2   An Employee may consent in writing to the authorization of the deduction of a COPE (Committee on Political Education) fund contribution from his her wages and to the designation of the Union as the recipient thereof. Such consent shall be in a form acceptable to the Employer and shall bear the signature of the Employee. An Employee may withdraw his/her political action fund authorization by giving at least thirty (30) days notice in writing to the Employer. Within thirty (30) calendar days receipt of a favorable ruling form the IRS or a reasoned tax opinion from Hartwyck's national healthcare tax counsel authorizing the same, whichever is sooner, the Employer shall deduct such COPE contribution from the pay of the Employees who request such deduction and shall transmit deductions to the Treasurer of the Union together with a list of Employees whose political action funds are transmitted at the time dues deduction are transmitted in the same manner.

## ARTICLE 25 – SAVINGS CLAUSE

25.1   In the event that any portion of the Agreement is invalidated by the passage of legislation or a decision of a court or government agency of competent jurisdiction, such invalidation shall apply only to that portion thus invalidated and all remaining portions of this Agreement not invalidated shall remain in full force and effect. Any substitution for the invalidated portion which is mutually agreed upon between the parties shall be reduced to writing and shall thereupon become a part of this Agreement.

## ARTICLE 26 – CONTRACTING OUT

26.1   The Employer shall not subcontract out any of the bargaining unit work covered by this Agreement without the prior written consent of the Union.

Such consent shall not be reasonably withheld. If permission is granted by the Union, any contract or agreement between the Employer and an outside contractor who employs employees in job classifications covered by this agreement shall, comply with all terms and conditions of this agreement, including but not limited to the seniority and lay-off provisions, and the Employer and an outside contractor who employs employees in job classification covered by this agreement shall, comply with all terms and conditions of this Agreement, including but not limited to the seniority and lay-off provisions, and the Employer guarantees the performance thereof by the contractor.

## ARTICLE 27 – 1199 BENEFIT FUND

27.1   Effective August 1, 2005 and subject to Trustee approval, the Employer shall make contributions to the 1199/SEIU Greater New York Benefit Fund ("Fund") for each employee covered by this Agreement at the rate of 21% of gross payroll of all bargaining unit employees which rate may be adjusted by the Trustees as necessary to maintain the level of benefits currently provided or as improved by the Trustees during the life of the Agreement subject to the following caps:

    8/1/06 up to 22%
    8/1/07 up to 23.5%

The method of calculation for gross payroll will remain unchanged from the previous agreement.

(c)   The above rates notwithstanding, if the Trustees approve a lower percentage of payroll in another collective bargaining agreement negotiated in 2005 with a different participating Employer, who was a participating Employer prior to 2005, in New Jersey, then the Union shall notify the Employer and that percentage shall be offered to the Employer.

(d)   If the Trustees raise the rates above the percentages contained in Section 1 above, the parties will meet within thirty (30) calendar days of receiving notice from the Fund in order to negotiate modifications to the plan subject to Trustee approval, or other changes in the economic package provided it does not require the Employer more than the agreed upon amounts. If

the parties cannot agree, then the matter shall be submitted to
interest arbitration based on the parties' "last best offers". In no
case shall the Arbitrator have the authority to impose increases
in the percentage above those contained in Section 27.1 above.

27.2   Such contributions shall be paid by the Employer on or before the
tenth day of each month and shall cover the previous month's employees covered
by this Agreement. In the event the Employer, without justification, fails to timely
remit contributions, the Arbitrator may, upon application, assess interest at the
legal rate against the Employer.

27.3   The payments so made by the Employer shall be used by the
1199/SEIU Greater New York Benefit Fund solely for those fringe benefits set
forth in the Trust Agreement heretofore executed and thereafter amended
establishing such 1199/SEIU Greater New York Benefit Fund. The parties
understand that the 1199/SEIU Greater New York Benefit Fund will be held and
managed under the terms and provisions of an Agreement and Declaration of Trust
executed in connection with the said Fund.

27.4   The Employer shall furnish to the Union monthly a statement
indicating the names of the Employees covered by this Agreement, their social
security numbers and the amount of wages paid, or such other report, record or
statement as shall supply such information, and agree to make available for
inspection to the Trustees of the Fund all payroll records that may be required for
the sound and efficient operation of the Fund, or which may be required by the
insurance companies, if any, insuring the employees.

27.5   In the event a dispute arises in connection with the Employer's failure
to make required contributions and the Union submits the matter to arbitration and
prevails, the Arbitrator's decision shall include a directive requiring the Employer
to pay all reasonable audit and accountants' fees, the full amount of the Arbitrator's
fees, collection expenses including court costs, if any, and interest at the then
current legal rate, together with reasonable attorneys' fees for the attorney
representing the Union and/or the Fund in connection with the arbitration and/or
court proceedings.

27.6   This Article does not waive any individual employee's legal rights to
seek legal recourse for lost benefits resulting from the Employer's delinquency in
the payment of contributions.

## ARTICLE 28 – CEDARBROOK RETIREMENT ACCOUNT

28.1  Effective April 1, 2005 or on an employee's twenty (20) year anniversary of her/his date of hire, whichever is later, the Employer shall contribute six dollars ($6.00) per week to an individual account for each employee who has completed twenty (20) or more years of service.    The contributions outlined above shall continue until September 30, 2007.

28.2  All contributions made by the Employer shall be made on a pre-tax basis.

28.3  Each employee's account shall receive interest at a rate equal to the fixed rate 403B plan [whatever it is called]. The Employer shall provide to each employee a quarterly account statement showing contributions, made, interest earned, and the total in the account.

28.4  The Employer shall provide the Union on March 31st of each year an audited statement of the accounts for each employee and the interest rate history of the fixed rate 403B plan.

28.5  If an employee leaves employment for any reason prior to September 30, 2007, the employee may withdraw the entire amount in her/his account or roll it over into another retirement account of her/his choosing. There shall be no early withdrawal liability or penalty applied.

28.6  On October 1, 2007, the Employer shall deposit the entire amount into the 403B plan of the employee's choosing and provide the employee with an audited statement of the closed out account for that employee's entire history.

28.7  The Employer's match of employee contributions up to a maximum of five dollars ($5.00) per week to the 403B plan shall continue in full force and effect until October 1, 2007.

## ARTICLE 29 – NATIONAL INDUSTRY PENSION FUND

29.1  COVERAGE. The Employer shall make periodic contributions on behalf of all employees covered by the Collective Bargaining Agreement to the

Service Employees International Union National Industry Pension Fund ("Fund") in the amounts specified in Section 3 below.

29.2   TERM. The Employer agrees to become and remain a participating Employer in the Fund throughout the term of this Collective Bargaining Agreement, including any extensions thereof.

29.3   CONTRIBUTIONS. Effective October 1, 2007, the Employer agrees to contribute fifteen cents ($0.15) per hour for each straight time hour paid to the Fund for each employee who has completed her/his probationary period and is covered by the Agreement from the employee's initial date of employment or the effective date of the Collective Bargaining Agreement, whichever is later.

> (a)   Contributions required by this provision shall be paid to the Fund on or before the fifteenth day of the month following the period for which contributions are due or before such other date as the Trustees may hereafter determine
>
> > (b) Contributions shall be transmitted together with a remittance report containing such information, in such manner, and on such form as may be required by the Fund or their designee.

29.4   TRUST AGREEMENT. The Employer hereby agrees to be bound by the provisions of the Agreement and Declaration of Trust establishing the Fund, as it may from time to time be amended, and by all resolutions and rules adopted by the Trustees pursuant to the powers delegated to them by that agreement, including collection policies, receipt of which is hereby acknowledged. The Employer hereby designates the Employer members of the Fund's Board of Trustees, or their duly selected successor(s), as its representatives on the Board

29.5   COOPERATION. The Employer and Union agree to cooperate with the Trustees of the Fund in distributing Plan booklets, literature, and other documents supplied by the Fund Administrator and in obtaining and providing such census and other data as may be required by the Fund's Administrator or Trustees to enable them to comply with the applicable provisions of the Employee Retire Income Security Act.

29.6   APPROVAL BY TRUSTEES.  The undersigned parties acknowledge that the provisions of this Article and the participation of the employees covered by it are subject to approval by the Trustees of the Fund and that the Trustees reserve the right to terminate, at their sole and unreviewable discretion, the participation of the employees covered by this Agreement and to establish the level(s) of benefits to be provided.  Termination may be directed by the Trustees for reasons including, but not limited to, failure of the Employer to timely pay contributions and expiration of a Collective Bargaining Agreement.  The parties further acknowledge that the Trustees' acceptance for participation in the Fund of the employees covered by the Collective Bargaining Agreement is limited only to the categories of employment covered by the Collective Bargaining Agreement at the time application for acceptance occurs and the admission of other categories of employment to participate in the Fund will require specific acceptance by the Trustees.

## ARTICLE 30 – TRAINING AND EDUCATION FUND

30.1   One half percent (1/2%) of gross payroll shall be contributed to the Training and Education Fund. This percentage will be based on payroll as currently calculated with the Greater New York 1199 Benefit Fund. The parties agree that the benefit calculation as currently provided by the fund will not be changed for this facility during the term of this Agreement.

## ARTICLE 31 – PAYMENTS

31.1   The Employer shall make prompt payments in full of all monies required to be checked off and all payments required to be made to the Funds. Failure to make such payments by the above-mentioned dates shall constitute a breach of this Agreement and upon five (5) days written notice by certified mail to the Employer, providing the same is permissible under applicable law, the Union, notwithstanding anything to the contrary contained in the Agreement shall have the right to strike and remove employees from the establishment until the Employer pays the full amount owed and also pays such employees for all time lost during such strike.  Any Employer who becomes delinquent with payment, as hereinabove provided, shall be required to post bond to secure future payments.

31.2   In the event a dispute arises in connection with the failure of the Employer to make the required payments provided for in this Agreement and in the event the Union submits the matter to arbitration and if the arbitrator sustains the

Union's position, his decision shall contain a directive that the Employer pay all collection expenses including Court costs, if any, and interest at the current legal rate, also the full cost of the arbitration and also a reasonable attorney fee for any attorney representing the Union in connection with the arbitration and Court proceedings.

## ARTICLE 32 – MANAGEMENT RIGHTS

32.1   The management of the establishment and the direction and control of the property and work force shall remain with the Employer. The rights herein described shall include but not be limited to:  the right to hire, layoff, discharge for just cause, in case of emergencies to require that duties and shifts other than those normally assigned be performed, except that "emergencies" shall not exist for longer than two (2) days; to make reasonable working rules and regulations of procedure and conduct; and to determine work shifts, provided, however, that the exercise of all these rights must be consistent with the terms and conditions of this agreement and are not to be used so as to discriminate against any person by reason of Union membership.

## ARTICLE 33 – LABOR MANAGEMENT COMMITTEE

33.1   **Composition.**  The Employer and the Union agree that they will establish a joint committee not to exceed three (3) members representing the Employer and three (3) Delegates representing the membership, for the sole purpose of meeting together to apprise each other of and discuss problems, concerns, suggestions and ideas related to the facility, the work force, and resident services, in an effort to promote better understanding between the parties.  Within thirty (30) days after the execution of this agreement or as soon thereafter as practicable, each party shall inform the other, in writing, of the composition of its respective committee members.  Any subsequent change in the composition of each party's committee members shall be promptly submitted to the  other party in writing.

33.2   **Meetings.**  The committee shall meet on work time at mutually agreed times and places.  Said meetings shall not exceed one per calendar year quarter and each meeting will not exceed one hour in duration unless mutually agreed.  An employee member of the Union shall be paid the appropriate wage for time spent attending such meetings.

33.3  **Limitations.** Meeting held pursuant to this article shall not be for the following purposes: (i) initiating or continuing collective bargaining; (ii) modifying, adding to, or detracting from the agreement; (iii) processing, resolving or dealing with grievances in any manner whatsoever or for any other purpose not expressly provided in paragraph A above. Further, said meeting shall be exclusive of the grievance and arbitration provisions of this agreement since grievances are not proper subjects at said meetings. Therefore, the Union does not waive its right to grieve and arbitrate any issue which may be otherwise grievable pursuant to the terms of this agreement should such issue be raised by either party to any meeting referenced herein. The parties further agree that the Employer's practice of meeting directly with employees to discuss problems concerns, suggestions and ideas not relating to terms and condition of employment, the contracting bargaining agreement or possible imposition of discipline   will continue and that the purpose of the Labor Management Committee is not to supplement or impede that practice.

## ARTICLE 34 – HEALTH AND SAFETY

34.1  The Employer recognizes its legal obligation   to provide a safe and healthful work environment and agrees to comply with all   relevant health and safety laws. All issues of Health and Safety will be addres sed in Labor Management Committee, including equipment. The Union will invite a bargaining unit member from each department to attend and participate in monthly Safety meetings.

## ARTICLE 35 - STAFFING AND PATIENT CARE

35.1  Management to consider recommendations of staffing and patient care issues made by the Union at Labor Management Committee Meetings.

## ARTICLE 36 – 1199 CREDIT UNION

36.1  The Employer agrees to utilize the 1199 Credit Union in addition to Employers Credit Union Plan.

## ARTICLE 37 – PARTIES

37.1  This Agreement shall be binding upon the parties hereto, their successors and assigns.  If the Employer shall sell, transfer, or otherwise dispose of its business, merge or consolidate it with that of any other person, firm or corporation, the agreement by which such sale, transfer, assignment, subletting, disposition, merger or consolidation is made must provide that the person, firm or corporation thereafter to operate the business shall assume all of the terms and conditions of this Agreement; and further, that it shall retain in its employ all employees then employed in the business; and further, that the person, firm or corporation that thereafter operates the business shall be personally responsible for all unpaid wages, all Welfare Fund payments, vacations, holidays, sick leave and all other monetary items.  Any dispute of whatsoever kind or nature arising under this Article shall be subject to the arbitration procedure herein, and the Arbitrator has jurisdiction to determine the same and issue a decision awarding any sums of money and damages.

## ARTICLE 38 – CONTINUATION OF OTHER TERMS OF EMPLOYMENT

38.1  The terms and conditions of employment as set forth in this Agreement shall govern the relations between the Employer and his respective employees, and no deviation from or modification of said terms and condition of employment shall be permitted.  However, if prior to this Collective Bargaining Agreement with the Union, the employees of the Employer enjoyed more favorable terms of employment, than such more favorable terms and conditions shall continue, provided further, however, that any question as to whether a specific term or practice is a more favorable term of employment and whether such term or practice should be continued, shall be subject to the grievance and arbitration procedures of this Agreement.

## ARTICLE 39 – DURATION

39.1  THIS AGREEMENT SHALL BECOME effective from April 1, 2005 through May 31, 2008, and shall remain operative and binding upon the parties hereto, their heirs, successors, assigns, administrators, concessionaires, and others.  If, for any reason, the Employer shall change its name or status, or the Union shall change its name, affiliation or status, it is agreed that such changes shall in no manner nullify or affect the binding obligations of this Agreement.

39.2   Either party shall have the right ninety (90) to one hundred twenty (120) days prior to the expiration of the Agreement to reopen and negotiate over terms and conditions to govern the Agreement.  Any subjects may be raised by either party.

39.3   This Agreement shall not be changed, altered, modified or amended unless in writing, and signed by the authorized representatives of the parties.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year above written.

EMPLOYER                                         UNION

**JFK HARTWYCK AT CEDAR BROOK**         **SEIU 1199 NEW JERSEY**

By: _____            By: _____

                                        _____
                                        Ida Damon

                                        _____

                                        _____

                                        _____

## SCHEDULE A – CEDAR BROOK

### A. WAGE INCREASES
*(Based on thirty-seven and one-half (37 1/2) hours per week.)*

*Grade 1 Includes: Ward Clerks, Orderlies, Attendants, Diet Aids, Dishwashers, Kitchen Helpers, Porters, Maids, Laundry Workers, Housekeeping, and Recreation Aides.

**Current**

| Job Title | Post Prob |
|---|---|
| Gr 1 | $ 9.89 |
| C.N.A | $ 9.89 |
| LPN | $ 18.00 |
| Cook | |
| Maintenance | |

**Eff. 5/1/05**

| Job Title | Post Prob |
|---|---|
| Gr 1 | $ 9.25 |
| C.N.A | $ 10.24 |
| LPN | $ 18.63 |
| Cook | |
| Maintenance | |

**Eff. 5/1/06**

| Job Title | Post Prob | eff 11/1/06 1 Year | eff 11/1/06 2 Yrs | eff 11/1/06 3 Yrs | eff 11/1/06 4 Yrs |
|---|---|---|---|---|---|
| Gr 1 | $ 9.46 | $ 9.65 | $ 9.84 | $ 10.04 | $ 10.24 |
| C.N.A | $ 10.47 | $ 10.68 | $ 10.89 | $ 11.11 | $ 11.33 |
| LPN | $ 19.05 | $ 19.43 | $ 19.82 | $ 20.22 | $ 20.62 |
| Cook | | | | | |
| Maintenance | | | | | |

**Eff. 5/1/07**

| Job Title | Post Prob | 1 Year | 2 Yrs | 3 Yrs | 4 Yrs | eff 11/1/07 5 Yrs |
|---|---|---|---|---|---|---|
| Gr 1 | $ 9.67 | $ 9.86 | $ 10.06 | $ 10.26 | $ 10.47 | $ 10.68 |
| C.N.A | $ 10.70 | $ 10.92 | $ 11.13 | $ 11.36 | $ 11.58 | $ 11.82 |
| LPN | $ 19.48 | $ 19.87 | $ 20.26 | $ 20.67 | $ 21.08 | $ 21.51 |
| Cook | | | | | | |
| Maintenance | | | | | | |

1. COST OF LIVING CLAUSE

It is hereby agreed that the cost of living index (B.L.S. Metropolitan New York Index) shall be the basis for all cost of living calculations. If this index shall increase by more than 9% for any yearly period, there shall be granted for each additional ½% over the 9%, up to 10% an additional $1.00 a week wage increase for all categories. For each additional 1% over 10% an additional $1.00 per week increase for all categories shall be granted up to 11% so that there is in effect a maximum payment of $3.00 per week under this cost of living provision. This adjustment shall be as of June 1, 1995 and each June 1 thereafter and shall be paid retroactively to the above dates upon publication of the indexes; payable by second payroll week following publication of Final index.

2. DIFFERENTIAL FOR RELIEF COOK

Upon execution of this Agreement, Dietary Aides will receive an additional seven dollars and fifty cents ($7.50) per shift for working as a Relief Cook.

3. LONGEVITY PAY FOR COOKS

Upon signing of this Agreement, cooks with ten (10) years of service will receive a four ($4.00) per week longevity increase, and cooks with twenty (20) years of service will receive an additional two ($2.00) per week longevity increase.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year above written.

SEIU 1199 NEW JERSEY

BY _____
AUTHORIZED SIGNATURE

JFK HARTWYCK AT CEDAR BROOK

BY _____
AUTHORIZED SIGNATURE

TITLE

## SCHEDULE B: CERTIFICATION OF DOMESTIC PARTNERSHIP

1.    I _____, and _____,
reside together and intend to do indefinitely at: _____
and share and depend upon each other for the common necessaries of life.


2.    I affirm that this domestic partnership has been in existence for a period of
_____ consecutive months prior to the date identified on this Certification.

3.    Each of us at least eighteen (18) years of age.

4.    Neither of us is married to anyone.

5.    We are not related to each other by blood closer than would bar marriage
and we are mentally competent to consent to contract.

6.    Each of us is the other's sole domestic partner and we intend to remain so
indefinitely.

7.    I, _____, understand that another Certification of Domestic
Partnership cannot be filed until one year after notifying the Employer of
termination of the previous partnership.

8.    I provide the information in this Certification to be used by the Employer for
sole purpose of determining eligibility for benefits. I understand that this
information will be held confidential and will be subject to disclosure only upon
my express written authorization or pursuant to court order.

9.    We are not in this relationship solely for the purpose of obtaining benefits.

10.    If I supply false information in this declaration, Hartwycks may: 1) recover
benefits improperly paid and 2) initiate disciplinary action which may include
termination of employment.


_____        _____
Employee Signature                 Date